UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

ALLEN L. WISDOM,

        Plaintiff,

v.

STATE OF NEVADA, et al.,

        Defendants.

3:06-CV-00094-PMP-RAM

ORDER

Presently before the Court is Defendant Jeffrey Dickerson's Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim for Which Relief May be Granted (Doc. #174), filed on March 19, 2010. Plaintiff filed an Opposition (Doc. #211) on May 12, 2010. Defendant filed a Reply (Doc. #213) on May 24, 2010.

**I. BACKGROUND**

In 1993, Plaintiff Allen Wisdom began a Chapter 7 bankruptcy proceeding in Reno, Nevada.[1] (Defs.' Position Br. (Doc. #155).) At the conclusion of his bankruptcy proceeding in 1999, Plaintiff filed a legal malpractice action in Nevada state court against the law firm that represented him in the bankruptcy proceeding. (Id.) The parties settled the malpractice action, referred to as Wisdom 1, in October 2001. (Id., Ex. 1.) In February 2004, Plaintiff filed a second lawsuit in Nevada state court, referred to as Wisdom 2. (Compl. (Doc. #4) ¶ 6 .) The defendants in Wisdom 2 included Plaintiff's attorney from Wisdom 1, Jeffrey A. Dickerson ("Dickerson"), as well as various other individuals and

---

[1] When ruling on a motion to dismiss, the Court may take judicial notice of matters of public record, including prior proceedings in state or federal court. See Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 866 n.1 (9th Cir. 2004).

entities including: David R. Grundy ("Grundy"); Lemons, Grundy & Eisenberg ("LGE"); Attorneys Liability Protection Society ("ALPS"); ALPS, Inc.; Ernest Adler ("Adler"); Kilpatrick, Johnston & Adler ("KJA"); and John Anthony Fetto ("Fetto"). (Id.)

In Wisdom 2, Plaintiff asserted claims against Defendant Dickerson for legal malpractice, related claims, and conversion. (Id. ¶ 7.) Plaintiff asserted claims against Dickerson, Grundy, LGE, ALPS, Adler, KJA, and Fetto for civil conspiracy, fraud, violations of Civil Rights, and violations of Nevada Racketeer Influenced and Corrupt Organizations ("RICO") statutes. (Id.)

In May 2006, the Nevada trial court granted summary judgment to Defendants Adler and KJA in Wisdom 2. (Defs. Position Br. (Doc. #155), Ex. 3.) In June 2006, the Nevada trial court ordered the complaint stricken and dismissed the remainder of the case with prejudice due to Plaintiff's repeated failure to obey court orders, attend his own deposition, and produce discovery. (Id., Ex. 4.) Plaintiff appealed this decision to the Nevada Supreme Court, which affirmed both the summary judgment and dismissal of Plaintiff's claims against the remaining defendants in Wisdom 2 on February 11, 2008. (Id., Ex. 5.)

Prior to the dismissal of Wisdom 2, Plaintiff filed this action on February 17, 2006, against all of the Wisdom 2 Defendants as well as the State of Nevada; Connie Steinheimer ("Steinheimer"); Wesley Ayers ("Ayers"); Eugene Wait Jr. ("Wait"); Sharon Benson ("Benson"); the Wait Law Firm; the Estate of Phillip Bartlett ("Bartlett"); Scott Glogovac ("Glogovac"); Gregory Livingston ("Livingston"); Lorraine Fitch ("Fitch"); Western Surety Company; and Burton, Bartlett & Glogovac ("BBG"). Plaintiff's Complaint asserts eight claims for relief, claims two through seven being relevant to Defendant Dickerson.

This Court previously dismissed Plaintiff's claims against all Defendants on a variety of grounds. (Order (Doc. #109).) Plaintiff appealed the dismissal of his claims to

2

the United States Court of Appeals for the Ninth Circuit. The Court of Appeals reversed the dismissal and remanded the matter for further proceedings. (Mem. (Doc. #143).) Upon remand, this Court ruled that the previously ordered dismissals of Defendants State of Nevada, Steinheimer, Ayers, Wait, Benson, and the Wait Law Firm stood and dismissed these Defendants from this action. (Order (Doc. #169).) This Court further ordered that for the remaining Defendants, any of Plaintiff's claims based on conduct pre-dating the filing of Plaintiff's complaint in Wisdom 2 were barred by claim preclusion. (Id.)

Defendant Dickerson now moves to dismiss Plaintiff's claims of civil conspiracy; violation of civil rights pursuant to 42 U.S.C. § 1981, § 1983, § 1985, and § 1986; fraud; defamation; abuse of process; and violations of Federal RICO statutes for failure to state a claim and for failure to plead fraud with particularity. Plaintiff opposes, arguing that Defendant Dickerson has not specified how Plaintiff's claims are inadequately pled.

**II. MOTION TO DISMISS**

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such a statement is necessary to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." William O. Gilley Enter., Inc. v. Atl. Richfield Co., 588 F.3d 659, 667 (9th Cir. 2009) (per curiam) (quotation omitted). Dismissal of a claim under Rule 12(b)(6) for failure to state a claim is appropriate when the complaint fails to satisfy Rule 8(a). Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).[2]

There is a strong presumption against dismissing an action for failure to state a claim. Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997). When deciding a

---

[2] In his opposition to Defendant's Motion to Dismiss, Plaintiff argues that Twombly does not apply in the present case because Plaintiff filed this action before Twombly was decided. Twombly clarifies the pleading standards set forth in Rule 8(a)(2) and is applicable to pleadings filed before it was handed down. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1944, 1949-52 (2009) (relying on Twombly even though Iqbal filed his complaint before Twombly was decided).

1  motion under Rule 12(b)(6), the Court accepts "all well-pleaded allegations of material
2  fact[] as true and construe[s them] in a light most favorable to the non-moving party."
3  Wyler Summit P'ship v. Turner Broad Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998).
4  However, the Court is not required to accept as true allegations that are merely conclusory.
5  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  "The issue is not
6  whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer
7  evidence in support of the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)
8  (overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982)).  To
9  survive a Rule 12(b)(6) motion, the plaintiff must do more than merely assert legal
10  conclusions; rather, the complaint must contain sufficient factual allegations to provide
11  plausible grounds for entitlement to relief.  Twombly, 550 U.S. at 555-56 (mere recitation
12  of the legal elements of a cause of action is insufficient to survive a Rule 12(b)(6) motion).

      **A.  Count Two: Civil Conspiracy**

14    In Nevada, "'an actionable conspiracy consists of a combination of two or more
15  persons who, by some concerted action, intend to accomplish an unlawful objective for the
16  purpose of harming another, and damage results from the act or acts.'"  Hilton Hotels Corp.
17  v. Butch Lewis Prods., Inc., 862 P.2d 1207, 1210 (Nev. 1993) (quoting Sutherland v. Gross,
18  772 P.2d 1287, 1290 (Nev. 1989)).  Further, "[t]o prevail in a civil conspiracy action, a
19  plaintiff has to prove an explicit or tacit agreement between the tortfeasors."  GES, Inc. v.
20  Corbitt, 21 P.3d 11, 15 (Nev. 2001).  Use of a term such as conspiracy by itself is
21  insufficient to survive a Rule 12(b)(6) motion, but may be sufficient if accompanied with
22  specific allegations, such as identifying a written agreement giving rise to the conspiracy or
23  alleging the conspirators "committed acts that are unlikely to have been undertaken without
24  an agreement." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1301 (9th Cir.
25  1999) (quotation omitted); See also Twombly, 550 U.S. at 557.  A complaint for civil
26  conspiracy must plead the "specific time, place, [and] person involved in the alleged

conspiracies." Id. at 565 n.10 (holding the plaintiff's complaint was insufficient because it merely identified a general seven year period in which the conspiracy allegedly occurred without alleging a specific time, place, or person involved).

In count two of his Complaint, Plaintiff alleges that Defendant Dickerson, along with other Defendants and employees of the State, conspired to violate Plaintiff's rights pursuant to the Americans with Disabilities Act; violate Plaintiff's constitutional and civil rights; commit fraud against Plaintiff; libel and defame Plaintiff; abuse process; and engage in a racketeering enterprise. Despite several statements alleging a civil conspiracy, Plaintiff's Complaint fails to allege facts sufficient to comply with Rule 8's pleading standard. While Plaintiff offers legal conclusions that Defendant Dickerson engaged in a civil conspiracy, Plaintiff's Complaint does not include factual allegations as to Dickerson's actions giving rise to such claims.

Paragraph 60 of Plaintiff's Complaint alleges Defendant Bartlett met ex parte with Judge Steinheimer on April 27, 2004, to wrongfully obtain a signature on an order. Paragraph 61 of Plaintiff's Complaint alleges Defendant Wait engaged in improper ex parte communications with the Discovery Commissioner on April 7, 2005. Paragraph 62 of Plaintiff's Complaint alleges Defendants Wait and Benson engaged in ex parte communication with Judge Steinheimer on April 15, 2005. While Plaintiff's Complaint makes these allegations of ex parte communications with judicial officials, it alleges neither how Dickerson was personally involved in these communications nor a specific agreement indicative of a conspiracy. Plaintiff's allegations do not state acts that were unlikely to have been undertaken absent a conspiracy amongst Defendants and two state judicial officers. Rather, Plaintiff's claims against Defendant Dickerson rest on conclusory statements that Defendants engaged in a conspiracy.

In his opposition, Plaintiff argues his allegations against Dickerson result from the acts of Dickerson's counsel Wait, the Wait Law Firm, and Benson. However, assuming

an agency relationship, this Court previously dismissed the claims against Defendants Wait, the Wait Law Firm, and Benson because the Complaint failed to give Defendants notice of the claims against them. (Order (Doc. #109).) Plaintiff then filed a notice (Doc. #124) to stand on his Complaint with respect to the dismissed Defendants. Plaintiff's conspiracy claims against the dismissed Defendants failed because the Complaint, among other deficiencies, failed to allege facts indicating an agreement between co-conspirators. Because Plaintiff's Complaint fails to allege facts sufficient to state a claim with respect to Defendants Wait, the Wait Law Firm, and Benson, any claims of liability for Dickerson based on an agency relationship with these Defendants also must fail. Therefore, the Court will grant Defendant Dickerson's Motion to Dismiss Plaintiff's civil conspiracy claim.

**B. Count Three: Violation of Civil Rights Act and Constitutional Rights**

In count three of his Complaint, Plaintiff alleges Defendant Dickerson violated his civil rights pursuant to 42 U.S.C. § 1981, § 1983, § 1985(2) and (3), and § 1986. Plaintiff also alleges he is entitled attorney's fees pursuant to 42 U.S.C. § 1988.

**1. Section 1981**

Section 1981 states, "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws . . . as is enjoyed by white citizens." To support a claim under § 1981, plaintiffs must allege facts indicating that the plaintiffs were discriminated against or denied such rights "on account of their race or ethnicity." Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1123 (9th Cir. 2008).

In the present case, Plaintiff does not allege discrimination based on his race or ethnicity. Therefore, the Court will dismiss Plaintiff's claims based on section 1981.

**2. Section 1983**

Section 1983 offers no substantive legal rights, but rather provides procedural protections for federal rights granted elsewhere. Albright v. Oliver, 510 U.S. 266, 271

(1994). To state a claim under § 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). Further, "individual liability under § 1983 arises only upon a showing of personal participation by the defendant." Avalos v. Baca, 596 F.3d 583, 587 n.3 (9th Cir. 2010) (citation omitted).

When a conspiracy between a non-state actor and the State is alleged, "an agreement or 'meeting of the minds' to violate constitutional rights must be shown." Mendocino Envtl. Ctr., 192 F.3d at 1301 (quotation omitted). When a plaintiff merely asserts that a conspiracy between private individuals and the state exists, but does not allege facts in support of the existence of such a conspiracy, dismissal under Rule 12(b)(6) is appropriate. Life Ins. Co. of N. Am. v. Reichardt, 591 F.2d 499, 502 (9th Cir. 1979).

The right to "[d]ue process requires notice reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." United Student Aid Funds, Inc. v. Espinosa, 130 S. Ct. 1367, 1378 (2010) (quotation omitted). An equal protection claim requires a showing that the state actor treated classes of people differently based on their class without justification, "[t]he Equal Protection Clause ensures that all persons similarly situated should be treated alike." Squaw Valley Dev. Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir. 2004) (quotation omitted).

Here, Plaintiff alleges that Defendant Dickerson violated § 1983 by conspiring with the State of Nevada to deny Plaintiff his rights to due process and equal protection under the Fourteenth Amendment. While Plaintiff asserts that Dickerson acted in concert with the State of Nevada, Plaintiff does not allege facts in support of the existence of the conspiracy or indicate, other than offering conclusory statements, how Defendant Dickerson personally participated in depriving Plaintiff of his constitutional rights. Further, Plaintiff's Complaint does not allege facts indicating a "meeting of the minds" between state actors

and private individuals necessary to allege a conspiracy.  Plaintiff, however, does claim that ex parte communications by Defendants caused Plaintiff to incur expense traveling to Reno to appear in a hearing in state court.  However, in regards to his due process claim, Plaintiff, by his own allegations, had both notice and opportunity to be heard with respect to the hearings allegedly fraudulently obtained by Defendants.  Therefore Plaintiff's due process rights were not violated.  In regards to his equal protection claim, Plaintiff did not plead an agreement between Defendant Dickerson and state actors sufficient to allege state action.  Further, Plaintiff's Complaint does not allege how Plaintiff was denied equal protection of the laws as compared to similarly situated persons.  Accordingly, the Court will dismiss Plaintiff's § 1983 claims.

### 3. Section 1985(2)

The second portion of 42 U.S.C. § 1985(2) protects against private conspiracies aimed at obstructing justice in state courts based on discriminatory animus.  See Portman v. Cnty. of Santa Clara, 995 F.2d 898, 909 (9th Cir. 1993).  To survive a motion to dismiss, the plaintiff must plead facts sufficient to allege (1) obstruction of justice (2) motivated by class based animus.  Id.

Here, Plaintiff asserts that Defendant Dickerson conspired with other Defendants to obstruct justice in the Nevada state court system.  Plaintiff further alleges that such obstruction was accomplished with discriminatory intent against the class of persons with disabilities, of which he is a member.  Plaintiff, however, fails to plead any facts sufficient to allege the existence of such a conspiratorial agreement or facts regarding the Defendants' discriminatory intent.  Further, even assuming Plaintiff's allegations of ex parte communications are sufficient to sustain a claim for obstruction of justice, Plaintiff fails to allege any acts of personal participation or discriminatory intent by Defendant Dickerson.  As before, claims against Benson, Wait, or the Wait Law Firm failed because, among other reasons, Plaintiff failed to plead the facts regarding the existence of a conspiratorial

agreement and Defendants' discriminatory intent. Therefore, any claims against Dickerson based on the actions of Benson, Wait, or the Wait Law Firm are likewise insufficient to survive a Rule 12(b)(6) motion. Accordingly the Court will dismiss Plaintiff's § 1985(2) claim.

**4. Section 1985(3)**

A complaint based on § 1985(3) must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States. 42 U.S.C. § 1985 (2010); Thornton v. City of St. Helens, 425 F.3d 1158, 1168 (9th Cir. 2005). For the second element, the complaint must allege that the deprivation was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Orin v. Barclay, 272 F.3d 1207, 1217 (9th Cir. 2001) (quotation and emphasis omitted). Section 1985(3) extends beyond race only "when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights." Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (quotation omitted).

In the present case, Plaintiff failed to plead facts sufficient to allege a conspiracy or an act in furtherance of a conspiracy, leaving the complaint with mere conclusory statements of law. Plaintiff's Complaint does allege instances of ex parte communications by Defendants other than Dickerson and various Nevada judicial officials, but does not set forth facts alleging a conspiratorial agreement between Dickerson and the other Defendants. Even assuming that persons with disabilities are a class protected by § 1985(3), Plaintiff's Complaint fails to allege facts consistent with a deprivation of equal protection of the laws. Further, Plaintiff does not allege facts about any conduct by Defendant Dickerson or facts
///

that indicate a discriminatory intent on behalf of Dickerson.  Therefore, the Court will dismiss Plaintiff's claims based on § 1985(3).

### 5. Section 1986

Section 1986 provides for recovery by plaintiffs against individuals who have knowledge of a § 1985 conspiracy and refuse to prevent it when they have the power to do so.  Accordingly, a plaintiff states a § 1986 claim, "only if the complaint contains a valid claim under § 1985." McCalden v. Cal. Library Ass'n, 955 F.2d 1214 (9th Cir. 1992).

Because Plaintiff's claims under § 1985 fail, so too must his claims under § 1986.  The Court therefore will dismiss Plaintiff's § 1986 claims.

### 6. Section 1988

Section 1988 allows for attorney's fees in connection with a successful claim under 42 U.S.C. § 1981, § 1982, § 1983, § 1985, or § 1986.  42 U.S.C. § 1988(b) (2010).  To claim fees under § 1988, a plaintiff must be successful on a claim under 42 U.S.C. § 1981 et seq.  See Porter v. Winter, 603 F.3d 1113, 1116 (9th Cir. 2010).

Because Plaintiff's Complaint fails to state a claim under § 1981, § 1983, § 1985, or § 1986, Plaintiff is not entitled to attorney's fees under § 1988.  Accordingly, the Court will dismiss Plaintiff's § 1988 claims.

### C. Count Four: Aiding and Abetting Fraud

Federal Rule of Civil Procedure 9(b) requires a plaintiff pleading fraud to "state with particularity the circumstances constituting fraud or mistake."  The Ninth Circuit has interpreted this to mean that "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).  Additionally, the plaintiff's complaint "must set forth what is false or misleading about a statement and why it is false." In re GlenFed, Inc. Sec. Lit., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).  Rule 9(b) requires that allegations of fraud be "specific enough to give

defendants notice of the particular misconduct which is alleged to constitute the fraud so that they can defend against the charge." Neubronner v. Milken, 6 F.3d 666, 671 (9th Cir. 1993) (quotation omitted). Secondary claims of fraudulent activity must be pled in accordance with Rule 9(b)'s heightened pleading standard. See Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th Cir. 2007) ("Rule 9(b) imposes heightened pleading requirements where the object of the conspiracy is fraudulent." (quotation omitted)).

Under Nevada law, a claim for fraud must allege:

> (1) a false representation made by the defendant; (2) defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation); (3) defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) damage to the plaintiff resulting from such reliance.

Albert H. Wohlers & Co. v. Bartgis, 969 P.2d 949, 957-58 (Nev. 1998). A claim for aiding and abetting fraud must allege that the defendant "knowingly and substantially assisted" in the course of conduct. Dow Chem. Co. v. Mahlum, 970 P.2d 98, 113 (Nev. 1998). Allegations that identify the specific time, place, and content of fraudulent actions by the defendant coupled with allegations of the plaintiff's reliance and damages are sufficient to withstand a motion to dismiss. Urbina v. Homeview Lending, Inc., 681 F. Supp. 2d 1254, 1260 (D. Nev. 2009) (holding the plaintiff's allegations that defendant knowingly misrepresented the plaintiff's interest rate and other specifically alleged information at the time of refinancing, that the plaintiff relied on the misrepresentations, and that the plaintiff suffered damages as a result were sufficient to comply with Rule 9(b)).

In count four of his Complaint, Plaintiff asserts that Defendant Dickerson aided, abetted, assisted, and ratified a series of fraudulent acts committed by other Defendants to this action. However, Plaintiff's Complaint fails to give Defendant Dickerson notice specific enough so that he can defend against the fraud charge. While the Complaint alleges instances of improper ex parte contact by Defendants other than Dickerson, it fails to allege

11

the "what, when, where, and how" of Dickerson's actions which aided, abetted, and/or ratified this course of conduct.  Plaintiff's Complaint does not indicate how Dickerson "knowingly and substantially assisted" in the perpetration of fraud.   Further, though Plaintiff's opposition alleges that Dickerson is liable through his agency relationship with Defendants Wait, the Wait Law Firm, and Benson, the Court dismissed all such claims against those Defendants as inadequate.  Paragraphs 61-64 of Plaintiff's Complaint allege improper ex parte communications with Nevada judicial officials by Defendants Wait and Benson.  Plaintiff's claims of fraud against Wait and Benson were dismissed because, among other reasons, they did not plead Plaintiff's justifiable reliance and damages.  While Plaintiff incurred expense in traveling to a hearing, in doing so he relied on orders from the Nevada state court, not misrepresentations by Defendants.  Therefore, even assuming an agency relationship exists, allegations of improper ex parte communications by Wait, the Wait Law Firm, or Benson present in the Complaint are insufficient to state a claim against Dickerson.  As such, Plaintiff's claim for fraud fails to meet the heightened pleading standard set forth in Rule 9(b).  The Court therefore will dismiss Plaintiff's claims for fraud.

### D. Count Five: Defamation

To maintain a defamation claim in Nevada the plaintiff must show "'(1) a false and defamatory statement by [a] defendant concerning plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages.'" Flowers v. Carville, 266 F. Supp. 2d 1245, 1251 (D. Nev. 2003) (quoting Pegasus v. Reno Newspapers, 57 P.3d 82, 90 (Nev. 2002)).  Determining whether a statement is defamatory "is a question of law for the court to decide." Id.

In count five of his Complaint, Plaintiff asserts that Defendant Dickerson made false, libelous, and defamatory statements about Plaintiff.  Plaintiff's Complaint does not put forth the alleged defamatory statements.  Therefore, the Court is unable to determine if they are defamatory.  Plaintiff's Complaint also fails to  specify which of the Defendants made

12

them, or specify to whom or how the statements were published.  Rather, Plaintiff's Complaint cites the legal elements of a defamation claim without alleging facts sufficient to support such a claim.  Such conclusory statements, by themselves, are insufficient to survive a motion to dismiss under Rule 12(b)(6).  Accordingly, the Court will grant Defendant Dickerson's Motion to Dismiss Plaintiff's defamation claims.

### E.  Count Six: Abuse of Process

In Nevada, a claim for abuse of process consists of "'(1) an ulterior purpose by the defendant[] other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding.'"  LaMantia v. Redisi, 38 P.3d 877, 879 (Nev. 2002) (quoting Posadas v. City of Reno, 851 P.2d 438, 444-45 (Nev. 1993)).  The complaint must allege the actions constituting abuse of process.  See Laxalt v. McClatchy, 622 F. Supp. 737, 752 (D. Nev. 1985).

In count six of his Complaint, Plaintiff alleges Defendant Dickerson, along with other named Defendants, is liable for abuse of process.  Plaintiff's Complaint fails to allege Dickerson's actions which allegedly constitute an abuse of process.  Plaintiff's Complaint merely states the Defendant "abused the process" without indicating which of Defendant Dickerson's actions give rise to such a claim.  Plaintiff's Complaint does not allege any conduct, which if true, would indicate a willful improper use of process with an ulterior purpose.  As such, Plaintiff's Complaint fails to place Defendant Dickerson sufficiently on notice of the claims against him.  Accordingly, the Court will dismiss Plaintiff's claims for relief based on abuse of process.

### F.  Count Seven: Violation of Federal RICO Statutes

When bringing a claim for violation of Federal RICO statutes, a plaintiff must allege and prove "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' business or property."  Ove v. Gwinn, 264 F.3d 817, 825 (9th Cir. 2001) (quotation omitted).  The particularity requirement of Rule 9(b) applies

to RICO claims where fraud is alleged as part of the racketeering activities.  Moore v. Kayport Package Express, Inc., 885 F.2d 531, 541 (9th Cir. 1989).

In his seventh claim for relief, Plaintiff asserts that Defendant Dickerson violated, and aided and abetted others in the violation of, Federal RICO statutes.  The Complaint does not set forth Defendant Dickerson's activities which allegedly violate Federal RICO statutes.  Presumably, the Complaint relies on allegedly fraudulent activity committed by Defendants other than Dickerson to sustain the RICO claims.  However, while the Complaint briefly states some actions by Defendant Fetto which allegedly violate Federal RICO statutes, it does not allege how Defendant Dickerson "knowingly and substantially assisted" this course of conduct.  In addition, this Court found that all claims based on conduct that predated the filing of the complaint in Wisdom 2 were precluded.  The present Complaint alleges Fetto's conduct pre-dating Wisdom 2, and states only that "this conduct is continuing."  However, the Complaint does not identify any actions by Fetto that post-date Wisdom 2.  This fails the heightened pleading standard set forth in Rule 9(b).  Further, while the Complaint alleges conduct by Wait, the Wait Law Firm, and Benson post-dating Wisdom 2, this Court previously dismissed these claims as insufficient.  As before, assuming an agency relationship, these allegations also would be insufficient to sustain a claim against Dickerson.  Accordingly, the Court will grant Defendant Dickerson's Motion to Dismiss Plaintiff's Federal RICO claim.

**III.  LEAVE TO AMEND**

If the Court grants a motion to dismiss, it then must decide whether to grant leave to amend the complaint.  Rule 15(a) counsels that courts should grant leave to amend "freely."  See also Foman v. Davis, 371 U.S. 178, 182 (1962).  Accordingly, "[i]f a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading

///

could not possibly cure the deficiency." <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986).

Here, Plaintiff may cure the defects in his Complaint if he amends to include allegations of fact sufficient to satisfy Rules 8 and 9(b). The Court therefore will grant Plaintiff leave to amend his Complaint to cure the deficiencies identified herein.

**IV.  CONCLUSION**

IT IS THEREFORE ORDERED that Defendant Jeffrey Dickerson's Motion to Dismiss for Failure to State a Claim for Which Relief May be Granted (Doc. #174) is hereby GRANTED.

IT IS FURTHER ORDERED that Plaintiff may file an amended complaint correcting the deficiencies identified in this Order on or before November 8, 2010.

DATED: October 7, 2010

_____
PHILIP M. PRO
United States District Judge

15